THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ABRAHAM SILBERTRUST, Plaintiff in Error.

*Opinion filed October 26, 1908.*

LARCENY—*an averment as to value in larceny prosecution must mean market value.* An averment in an indictment for larceny of a bill of exchange, that it was "of the value of $150 to the First National Bank of Chicago, the property of Esther Silbertrust," is not equivalent to a general averment of value, which means market value, and as the words "to the First National Bank of Chicago" cannot be stricken out as surplusage, the indictment is as though it contains no averment of value, and a motion in arrest of judgment should be sustained.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. A. H. CHETLAIN, Judge, presiding.

On September 7, 1907, Abraham Silbertrust, the plaintiff in error, then about nineteen years of age, was convicted in the criminal court of Cook county of larceny as bailee of a certain bill of exchange or bank draft issued by the First National Bank of Chicago for the sum of $150. After overruling his motions for a new trial and in arrest of judgment the court entered judgment upon the verdict and plaintiff in error was sentenced to the Pontiac reformatory.

The indictment upon which plaintiff in error was tried contains four counts. By each count he is charged with embezzlement and larceny as bailee of certain bank notes of the value of $50, and one draft, the same being an instrument in writing for $150, of the value of $150 to the First National Bank of Chicago, the property of Esther Silbertrust, the owner thereof.

It appears from the record that the plaintiff in error is the step-son of Esther Silbertrust, the complaining witness. About January 1, 1907, Mrs. Silbertrust left Chicago for Los Angeles, California, where her husband, the father of plaintiff in error, was sojourning on account of ill-health. On the day of her departure she stated to plaintiff in error that she did not think she would have enough money to pay his father's expenses while in California and asked him to send her $150 on the following day. On January 2, 1907, plaintiff in error went to the First National Bank of Chicago and purchased a bill of exchange for that sum, payable to the order of E. Silbertrust, his step-mother, drawn upon the Farmers and Merchants National Bank of Los Angeles, California. The evidence as to the source from which plaintiff in error obtained the money with which to purchase this bill is conflicting. He testified that it was paid for by a check drawn on his own personal account in the First National Bank, and in this he is corroborated by the testimony of William G. Miller, the assistant draft teller at that bank. Sam Levin, a son of Mrs. Silbertrust by a former marriage, with whom she had left the key to her safety deposit box in the Northwestern Trust and Savings Bank in Chicago, testified that during the forenoon of January 2, 1907, plaintiff in error came to him and suggested that they go over to the trust and savings bank and draw out some money from the deposit box, as he wanted to send Mrs. Silbertrust a draft for $150; that they then went over to the bank together, and the witness, after having been identified, opened the box and

took out $500 and gave it to plaintiff in error, who then said that out of that money he would send Mrs. Silbertrust $150 and that he would deposit the rest in the bank to pay bills of the business in which the father and plaintiff in error were engaged, but that he (Levin) did not know what plaintiff in error, in fact, did with the money. Plaintiff in error's version of this transaction is that Levin did take $500 from the safety deposit box but that he did not give him the money. On January 24, 1907, the father having died, Mrs. Silbertrust returned to Chicago with the remains. The draft in question had not been cashed by Mrs. Silbertrust and she brought it back with her. Shortly after her arrival at home, at plaintiff in error's suggestion, Mrs. Silbertrust, according to her testimony, turned the draft over to him for safe keeping, and afterwards made numerous requests of him to return the draft to her but he refused so to do. He says she returned the draft to him as his property, and that she recognized his right to get the money for it for his own use. On or about February 3, 1907, it was taken by him to the First National Bank of Chicago and re-deposited to his credit, upon his statement that it had never been out of his possession and that he had not used it for the purpose intended. The draft was never endorsed or assigned by Mrs. Silbertrust.

To review the judgment of the criminal court plaintiff in error has sued out this writ, and it is contended by him, among other things, that the court erred in overruling the motion in arrest of judgment.

NICHOLAS J. PRITZKER, (LOUIS GREENBERG, and E. J. RABER, of counsel,) for plaintiff in error.

W. H. STEAD, Attorney General, and JOHN J. HEALY, State's Attorney, (JOHN E. NORTHRUP, of counsel,) for the People.

Mr. JUSTICE SCOTT delivered the opinion of the court:

Larceny is thus defined: "Larceny is the felonious stealing, taking and carrying, leading, riding, or driving away the personal goods of another. Larceny shall embrace every theft which deprives another of his money or other personal property, or those means or muniments by which the right and title to property, real or personal, may be ascertained. Private stealing from the person of another, and from a house in the daytime, shall be deemed larceny. Larceny may also be committed by feloniously taking and carrying away any bond, bill, note, receipt or any instrument of writing of value to the owner." (Hurd's Stat. 1905, chap. 38, sec. 167.)

There was no proof whatever to support the averments of the indictment in reference to the larceny of the bank notes. To sustain the conviction it is necessary that an averment of the value of the bill of exchange should appear in the indictment. (*Brown* v. *People,* 173 Ill. 34.) Each count charged that the bill of exchange was the property of Esther Silbertrust and that it was "of the value of $150 to the First National Bank of Chicago," and neither count contained any other averment in reference to the value of the bill of exchange. It is contended on the part of plaintiff in error that in this condition of the record the judgment should have been arrested for lack of a proper averment of value in the indictment, while defendant in error contends that the allegation that the draft was of value to the First National Bank of Chicago is substantially a general allegation of value, or if not, that the words "to the First National Bank of Chicago" may be rejected as surplusage.

In *State* v. *James,* 58 N. H. 67, it was said in reference to a printed list of names and dates, being a list kept by the owner of a newspaper of the names of the subscribers and the dates of the expiration of the subscriptions, "its value as a statutory subject of larceny is its market value,

and evidence that it is worth $20 to its owner and worth nothing to anybody else does not show its market value to be $20. To be of the market value of $20 it must be capable of being sold for that sum at a fairly conducted sale,—at a sale conducted with reasonable care and diligence in respect to time, place and circumstances, for the purpose of obtaining the highest price." In *Clark* v. *State,* 23 Tex. App. 612, *Smith* v. *State,* 44 S. W. Rep. (Tex.) 520, and *People* v. *Cole,* 54 Mich. 238, it was held that the value which must be proven is the market value of the property, from which the conclusion is, that a general allegation of value in an indictment means market value.

Under these authorities it cannot be held that an averment that the property was of a certain value "to the First National Bank of Chicago" is substantially the same as a general averment of value. Whether in this particular case the indictment would have been good had it averred the value of the bill of exchange to Esther Silbertrust, the owner thereof, and whether proof of its value to her, in the absence of proof of its market value, would warrant a conviction under the provisions of our Criminal Code, are questions not here presented. As the words "to the First National Bank of Chicago" cannot be stricken out of the averment with reference to value without materially changing the meaning of the charge, those words cannot be rejected as surplusage. As the allegation relative to value is not such as the law requires, the indictment is as though it contained no averment of value. For this reason the judgment should have been arrested. *Davis* v. *State,* 40 Ga. 229.

The judgment of the criminal court will be reversed.

*Judgment reversed.*